## L. B. LEDOUX, Wife of J. A. BOYD, *v.* HER HUSBAND.

A divorce *à vinculo,* will be granted on the ground that defendant has committed adultery in the matrimonial dwelling, or kept a concubine openly and publicly in another, without a prior or contemporaneous judgment of separation, *à menza et thoro.*

A donation *inter vivos,* made in favor of marriage, is not revoked to the amount of the disposable portion by the birth of children, issue of the marriage.

The revocation declared by Art. 1556, C. C., is effected by the birth of children, issue of a marriage other than that in favor of which the donation was made.

A condition in the Act of donation, that the property shall revert to the donor in case the donee "shall in any manner or form, be separated from the donor, her husband," *Held:* not to apply to a separation obtained against the donor, and for his fault. Such a condition is in derogation of Art. 152, C. C., and is null. C. C 11.

The limitations over, of the property donated, in the event of the death of the donor or donee, cannot properly be noticed during the life of both parties; and the donor is entitled to the possession until the contingent event happens.

APPEAL from the District Court of St. Martin.

*A. Deblanc,* for plaintiff and appellant. *E. Simon,* for defendant.

BUCHANAN, J. This is a suit for divorce. The petition alleges that defendant has committed adultery, and has kept and keeps concubines in the common dwelling; also, that defendant has assaulted and beaten plaintiff on various occasions.

The defendant excepts to the action, on the ground that it has not been preceded by a judgment for separation of bed and board; and on the further ground that the petition in this case does not pray for a separation of bed and board, as well as for a divorce.

LEDOUX
v.
BOYD.

The law upon which the counsel relies in support of this exception, is the Act of 1827, relative to divorces, page 130, Session Acts. The Judge did not err in overruling this exception. Had the plaintiff claimed the divorce for ill treatment alone, the divorce could only have been granted two years after a judgment of separation of bed and board. Act of 1827, Section 4. But where the husband has committed adultery in the matrimonial dwelling, or has kept a concubine openly and publicly in any other, a suit may be immediately commenced for divorce by the wife; and the expression of the Act of 1827, that in such case, "a judgment of divorce may be granted in the same decree which pronounced the separation of bed and board," is not to be taken as requiring either a prayer, or a decree for a separation specifically; for, a subsequent section of the Statute (the seventh), declares that the effects of a divorce include all those which appertain to a judgment of separation of bed and board, and, in addition thereto, a dissolution of the bond of matrimony. The greater decree, which is the divorce, therefore includes the less, which is the separation from bed and board, and is virtually, a decree of separation of bed and board, although the same be not specified. Upon the merits, the proof makes out abundantly the charge of adultery, contained in the petition. The decree of divorce, is, therefore, correct. We also approve of that portion of the judgment appealed from, which gives the custody of the children, issue of the marriage, to the plaintiff.

The next question to be examined, the divorce being confirmed, concerns the right of the wife to recover of her husband the property given to her by the latter in the marriage contract. The District Judge considered this donation as revoked to the amount of the disposable portion by the birth of children of the marriage. This portion of the judgment is the subject of plaintiff's appeal; and a careful examination convinces us that the learned Judge has mistaken the meaning of the Article 1556 of the Civil Code, upon which, this decision has turned. That Article declares that donations *inter vivos* shall be revoked by the subsequent birth of children to the donor. But there are two excepted cases to this rule, expressed in the Article itself. The first, where the donation is one made in favor of marriage by the ascendants of the married persons; the second, when the donation is made in favor of marriage by one of the married persons to the other. The present case comes entirely within the second of these exceptions. Some discussion has arisen at bar upon the phraseology of the Article, which we deem unnecessary here to analyse more particularly, because the construction, contended for by the learned counsel of defendant, would lead, as we conceive, to a direct contradiction in terms. The object of marriage, it cannot be disputed, is the perpetuation of families; and the procreation of children is, of necessity, in the contemplation of the parties, to that contract. The interpretation which would make the Legislature declare a donation made in favor of marriage, to be revoked by the happening of that event (the birth of children) which, as all the authorities agree, is a principal object of marriage, is inadmissible. The revocation of which the Article 1556 speaks, is a revocation, produced not by the birth of children, issue of the same marriage in favor of which the donation has been made, but by the birth of children issue of some other marriage, and offspring of a donor, other than a party to the marriage in favor of which the donation was made, or than the ascendant of such party. Viewed in this light, the Article 1556 is consistent with itself and with general principles. Marriage is a contract highly

conducive to morality, and to the good order of society. It is, therefore, favored by the law, which has secured to children born in wedlock, a portion of their father's estate, which the latter is not allowed to alienate, to their prejudice, by a donation made, even in favor of a marriage of another person, unless that other stand to him in the relation of a child.

The Article 1739, C. C., is not applicable between these parties, or at this time. That Article refers to an event which is certain to happen, but which has not yet happened—the death of the donor, and to another event, which is uncertain, and which may never happen—the survivorship of the donor's children or other legitimate descendants. Again, the lot of ground and the three slaves which were donated by marriage contract, may be more or may be less than the tenth part in value of the property, which the defendant may have at his death. But this can only be determined at the defendant's death, and the donation, if excessive, can only be reduced at the instance of the defendant's forced heirs, or of their heirs or assigns. C. C. 1490, 1491.

The learned counsel of defendant has also urged the terms of the marriage contract in support of the decision of the District Court, in relation to this donation. They are as follows: "To have and to hold the said parcel of ground, with its improvements, and the said three slaves, unto the said *Ludevine Ledoux*, and her heirs forever, in consideration of the aforesaid marriage, and on the express condition that should she die before the said *John A. Boyd*, or in any manner or form be separated from him as her husband, then the said property and slaves, with their increase, shall be returned to him, and shall be his property, or, should the said *John A. Boyd* die first, having children born of his said marriage, then the said property and slaves are to belong to the said children, but should he die first, without leaving children as aforesaid, then the same is to be full property of the said *Ludevine Ledoux*, and her heirs forever."

By the above clause of the marriage contract, relative to separation, we do not understand that the donated property reverts to the donor in case of separation obtained against him, because, even if the ambiguous expressions used are to be construed as a prospective renunciation of a legal right on the part of the wife, the convention would be in derogation of Article 152 of the Civil Code, which is a law eminently conducive to public order and good morals; and would be null, according to Article 11 of the Code. In the language of Toullier, vol. 2, p. 78, No. 744, "Il n'est pas permis de promettre d'avance, l'impunité d'une action que la loi désapprouve et punit."

As to the limitations of the estate on the property donated, to the donor in case of the predecease of the donee; to the children of the marriage upon the predecease of the donor; to the donee and her heirs forever, in case of predecease of the donor, without issue of the marriage; these are matters which it would be premature to examine at present. The donation is an absolute conveyance: "the said *John A. Boyd*, does by these presents convey, cede, transfer and and deliver to the said *Ludevine Ledoux*, and her heirs forever." The donee is entitled, by the Article 152 C. C., to the advantage thus given,—to the property thus donated. Should she die before the donor, the question may arise whether the donor shall take the property in preference to the donee's heirs,—. whether the limitation shall control the words of conveyance to donee and her heirs; but now, that both donor and donee are living, there can be no question of the right of the latter to the possession and enjoyment of the property.

84

. The judgment decreeing the divorce, but rejecting the claim of the plaintiff to the property donated, was rendered on the 5th of October, 1854. A judgment was also rendered on the 8th of October, 1854, upon an injunction sued out by defendant against an execution for alimony. The petition of appeal of plaintiff was filed on the 9th of October, 1854. But from the terms of that petition, and of the appeal bond given by the appellant, it is not understood by us that plaintiff has appealed from any judgment except the final one of the 5th of October, 1854.

It is therefore adjudged and decreed, that the judgment of the District Court be amended: that the plaintiff be put in possession of the property mentioned in the second article of the marriage contract between the defendant and the plaintiffs, passed before P. P. Briant, notary public, in the parish of St. Martin, on the 17th of September, 1846, being a lot of ground, with improvements, and three slaves, therein described; that as so amended, the judgment of the District Court be affirmed; and that defendant pay costs in both courts.

NOTE.—DUPRE, J., presided at the District Court.